IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADOL T. OWEN-WILLIAMS, JR.,

    Plaintiff,

  v.                                      Civil Action No. PX-17-1112

MICHAEL KWARCIANY,
*et al.*,

    Defendants.

*******

**MEMORANDUM OPINION**

On April 27, 2017, Plaintiff Adol T. Owen-Williams Jr. ("Owen-Williams"), proceeding *pro se*, asserted claims for "false arrest and detention, false, imprisonment, malicious prosecution, abuse of process, negligence, and intentional infliction of the emotional distress" against Michael Kwarciany and the "Montgomery County Police,"[1] in connection with his arrest at or around October 19, 2016, and subsequent conviction in January 2017. *See* ECF No. 1 at 1. Owen-Williams requests compensatory damages and punitive damages of $5,100,000.00. *Id.* at ¶ 73.

Pending before the Court are Defendants' motions to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Defendants' motion for sanctions requesting fees, costs and a pre-filing injunction against Owen-Williams. *See* ECF Nos. 12 & 13, 14. For the following reasons, the motions to dismiss, ECF Nos. 12 & 13, are GRANTED and the Complaint is dismissed. The motion for sanctions, ECF No. 14, is GRANTED in part and DENIED in part.

---

[1] Because Plaintiff is proceeding *pro se*, the Court will substitute Montgomery County as the proper Defendant. Montgomery County has responded to the Complaint.

**I. Background**

The Court takes the facts from Plaintiff's Complaint as true for purposes of the motions to dismiss. Plaintiff Adol T. Owen-Williams Jr. ("Owen-Williams") is a duly elected member of the Montgomery County Republican Central Committee (MCRCC). ECF No. 1 at ¶ 1. Historically, Owen-Williams has attempted to gain entry to MCRCC's headquarters, located in Rockville, Maryland, and in September 2015, Montgomery County issued a No Trespass Order to Owen-Williams, barring him from the MCRCC headquarters. *Id.* at ¶ 8; *see also* ECF Nos. 13-3 & 13-4. Owen-Williams alleges that the No Trespass Order was issued because Michael L. Higgs ("Higgs"), the former chair of the MCRCC, "was desperate to remove Owen-Williams from the MCRCC due to the fact that Higgs and several of his comrades did not want a Black American on the MCRCC," ECF No. 1 at ¶ 8, and because Owen-Williams "previously exposed to the Montgomery County State Attorney's Office for Financial Fraud and involvement in habitually viewing Child Pornography [sic] at the MCRCC Headquarters," *id.* at ¶ 12. Sometime before October 2016, the September 2015 No Trespass Order was rescinded or expired. *See id.* at ¶ 8; *see also* ECF No. 13-3 at 2.

On October 17, 2016, Higgs called the Montgomery County Police and identified himself as the "Owner or Owner Agent" of the MCRCC headquarters. ECF No. 1 at ¶ 20. Higgs stated that Owen-Williams was trespassing on the MCRCC headquarters and requested his arrest. *Id.* The next day, October 18, 2016, Owen-Williams received a phone call from Detective Michael Kwarciany of the Montgomery County Police Department ("Detective Kwarciany") regarding the "ongoing Civil Dispute" between Owen-Williams and other members of the MCRCC. *Id.* at ¶ 7. Owen-Williams agreed to meet with Detective Kwarciany later that afternoon. *Id.* At the

meeting, Detective Kwarciany informed Owen-Williams that Montgomery County was serving him with "ANOTHER UNLAWFUL one (1) year NO TRESPASS ORDER" for the MCRCC headquarters. *Id.* at ¶ 8. Owen-Williams told Detective Kwarciany that Kwarciany was "willfully overriding the Court['s] TWO prior ruling[s] so as to impose Kwarciany['s] will on Owen-Williams at the request of one or more of the three individuals committing rampant crimes at the MCRCC," and that Owen-Williams would seek an "Injunction, Show Cause Order, and [/] or Sanctions because of Kwarciany's unlawful actions." *Id.* at ¶¶ 8–9.

Owen-Williams received a phone call from Detective Kwarciany the following day informing him that it would not be necessary for Owen-Williams to file an injunction because "after having discussed Kwarciany's previous day's actions with the [Montgomery County Police] 'Command Staff' . . . they unanimously decided to AGAIN RECEND [sic] the UNLAWFUL No Trespass Order." *Id.* at ¶ 10. Detective Kwarciany then requested that Owen-Williams come and meet with "Command Staff" at the "Police Headquarters." *Id.* However, upon Owen-Williams' arrival to the "Police Headquarters . . . Owen-Williams was violently ambushed and descended upon by approximately 8–10 Police Officers who appeared to come out of every closed door in the lobby of the building, and violently placed under arrest." ECF No. 1 at ¶¶ 11, 42, 48, 55. Owen-Williams was presented with a "Statement of Charges" which contained three charges, and Detective Kwarciany "made it pellucidly [sic] clear that his UNLAWFUL Actions were being done at the request, AND AS A FAVOR, to Michael Higgs, R. Dwights Patel, and Mark Uncapher," to assist their efforts to remove Owen-Williams from the MCRCC. *Id.* at ¶ 12.

At or around January 31, 2017, Owen-Williams was "convicted of 2 of the 3 charges" detailed in the Charging Papers — trespass, burglary, and malicious destruction of property —

and sentenced to two years' imprisonment. *Id.* at ¶ 15; ECF Nos. 13-4 & 13-5. The conviction was "[b]ased primarily on the False Charges by Kwarciany" and "absolutely zero factual or physical evidence." *Id.* at ¶ 15. On April 11, 2017, "upon a factual review of the false statements made by Kwarciany and Higgs," an appellate court overturned his conviction and dismissed the charges. *Id.* at ¶ 17. Owen-Williams filed this lawsuit on April 27, 2017, alleging state common law claims and violation of his constitutional rights. *See* ECF No. 1.

## II. Standard of Review

When ruling on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), all well-pleaded allegations are accepted as true and in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. " '[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)); *see also Bell v. Bank of Am., N.A.*, No. RDB-13-0478,

2013 WL 6528966 (D. Md. Dec. 11, 2013) ( "Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obligated to ferret through a [c]omplaint that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.").

**III. Analysis**

Defendants urge dismissal of this case under Rule 12(b)(1) of the Federal Rules of Civil Procedure because the Complaint alleges only state common law claims, and thus in Defendants' view, does not present a federal question. Further, they argue, that to the extent any federal claim is articulated in the Complaint, the claims must be dismissed on grounds of qualified immunity or pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), or for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A fair reading of the Complaint demonstrates that it adequately pleads claims against all Defendants pursuant to 42 U.S.C. § 1983. Accordingly the Court retains federal question jurisdiction. *See* 28 U.S.C. § 1331. The motion to dismiss for lack of jurisdiction is denied.

    **a. Section 1983 Claims**

Defendants also assert that Owen-Williams has failed to state an adequate claim, and so dismissal is warranted under Rule 12(b)(6). Defendants are correct.

First, any such claims against the Montgomery County Police Department must be dismissed because the police department itself is not an entity capable of being sued. Section 1983 provides for the liability of "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Local police departments," however, "are not legal entities amendable to civil suit — the local police

department's parent municipal corporation is the proper defendant." *Costley v. City of Westminster,* No. GLR-16-1447, 2017 WL 35437, at *1 n.1 (D. Md. Jan. 4, 2017), *aff'd sub nom. Costley v. Steiner,* 689 Fed.Appx. 753 (4th Cir. 2017), (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989). That said, because Owen-Williams is proceeding *pro se*, the Court construes his claims against the Montgomery County Police Department as against Montgomery County, which can be sued as a "person" subject to § 1983. *See* Fed. R. Civ. P. 1; *see also Costley*, 2017 WL 35437, at *1 n.1.

Turning to the merits of the § 1983 claim against the County, a plaintiff must allege a violation of the Constitution or statutes of the United States to sustain a § 1983 claim, and "specifically may not rest solely on state statutes or qualify as a common law tort." *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988). The Complaint asserts a litany of state common-law tort claims related to Owen-Williams' arrest and subsequent detention, with scattered but repeated references to 42 U.S.C. § 1983, the "Constitution of the United States," and the Fourth and Fourteenth Amendments to the United States Constitution. *See, e.g.* ECF No. 1 at ¶ 2. Liberally construed, Owen-Williams is attempting to assert a § 1983 claim for violation of his Fourth Amendment right to be free from unlawful arrest and detention. *See Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (stating that "[b]oth the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common law antecedents.") (quoting *Cupp v. Murphy*, 412 U.S. 291, 294–95 (1973)).

Defendant Montgomery County argues that pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), any constitutional claims must be dismissed because Owen-Williams pleads liability to the County solely under a theory of respondeat superior. *See* ECF Nos. 1 at ¶ 73 & 17 at 2. It is well-established that "[a] municipality cannot be held liable solely

department's parent municipal corporation is the proper defendant." *Costley v. City of Westminster,* No. GLR-16-1447, 2017 WL 35437, at *1 n.1 (D. Md. Jan. 4, 2017), *aff'd sub nom. Costley v. Steiner,* 689 Fed.Appx. 753 (4th Cir. 2017), (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989). That said, because Owen-Williams is proceeding *pro se*, the Court construes his claims against the Montgomery County Police Department as against Montgomery County, which can be sued as a "person" subject to § 1983. *See* Fed. R. Civ. P. 1; *see also Costley*, 2017 WL 35437, at *1 n.1.

Turning to the merits of the § 1983 claim against the County, a plaintiff must allege a violation of the Constitution or statutes of the United States to sustain a § 1983 claim, and "specifically may not rest solely on state statutes or qualify as a common law tort." *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988). The Complaint asserts a litany of state common-law tort claims related to Owen-Williams' arrest and subsequent detention, with scattered but repeated references to 42 U.S.C. § 1983, the "Constitution of the United States," and the Fourth and Fourteenth Amendments to the United States Constitution. *See, e.g.* ECF No. 1 at ¶ 2. Liberally construed, Owen-Williams is attempting to assert a § 1983 claim for violation of his Fourth Amendment right to be free from unlawful arrest and detention. *See Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (stating that "[b]oth the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common law antecedents.") (quoting *Cupp v. Murphy*, 412 U.S. 291, 294–95 (1973)).

Defendant Montgomery County argues that pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), any constitutional claims must be dismissed because Owen-Williams pleads liability to the County solely under a theory of respondeat superior. *See* ECF Nos. 1 at ¶ 73 & 17 at 2. It is well-established that "[a] municipality cannot be held liable solely

department's parent municipal corporation is the proper defendant." *Costley v. City of Westminster,* No. GLR-16-1447, 2017 WL 35437, at *1 n.1 (D. Md. Jan. 4, 2017), *aff'd sub nom. Costley v. Steiner,* 689 Fed.Appx. 753 (4th Cir. 2017), (citing *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989). That said, because Owen-Williams is proceeding *pro se*, the Court construes his claims against the Montgomery County Police Department as against Montgomery County, which can be sued as a "person" subject to § 1983. *See* Fed. R. Civ. P. 1; *see also Costley*, 2017 WL 35437, at *1 n.1.

Turning to the merits of the § 1983 claim against the County, a plaintiff must allege a violation of the Constitution or statutes of the United States to sustain a § 1983 claim, and "specifically may not rest solely on state statutes or qualify as a common law tort." *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988). The Complaint asserts a litany of state common-law tort claims related to Owen-Williams' arrest and subsequent detention, with scattered but repeated references to 42 U.S.C. § 1983, the "Constitution of the United States," and the Fourth and Fourteenth Amendments to the United States Constitution. *See, e.g.* ECF No. 1 at ¶ 2. Liberally construed, Owen-Williams is attempting to assert a § 1983 claim for violation of his Fourth Amendment right to be free from unlawful arrest and detention. *See Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (stating that "[b]oth the standards and procedures for arrest and detention have been derived from the Fourth Amendment and its common law antecedents.") (quoting *Cupp v. Murphy*, 412 U.S. 291, 294–95 (1973)).

Defendant Montgomery County argues that pursuant to *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978), any constitutional claims must be dismissed because Owen-Williams pleads liability to the County solely under a theory of respondeat superior. *See* ECF Nos. 1 at ¶ 73 & 17 at 2. It is well-established that "[a] municipality cannot be held liable solely

because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see also Lee v. O'Malley*, 533 F. Supp. 2d 548, 553 (D. Md. 2007) ("[A] municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior* . . . a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue."). Rather, liability extends to a municipality only where the alleged constitutional deprivation arose from the municipality's unlawful policy, custom, or practice. *Monell*, 436 U.S. at 690–95.

Owen-Williams merely avers that the County is liable because it employed Detective Kwarciany's at the time he allegedly violated Owen-Williams' constitutional rights. *See* ECF No. 1. at ¶¶ 33, 39, 52, 63, 73. Because a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," *Monell*, 436 U.S. at 694, Montgomery County's motion to dismiss Owen-Williams' § 1983 claim, ECF No. 13, is GRANTED.

As to the individual officer, Detective Kwarciany asserts the defense of qualified immunity as to Owen-Williams' Fourth Amendment claims. *See* ECF No. 13. "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law. . . . [I]f a reasonable officer might not have known for certain that the conduct was unlawful[,] the officer is immune from liability." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866–67 (2017) (internal quotations and citation omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (holding that qualified immunity extends so long as an officer's conduct did not violate clearly established constitutional rights of which a reasonable person would have known.). Questions of qualified immunity should be resolved "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). After all, "the 'driving force' behind the creation of the qualified immunity doctrine was a desire to ensure that

'insubstantial claims' against government officials be resolved prior to discovery." *Id.* at 231 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)).

In assessing whether qualified immunity bars suit against a defendant, the court considers whether (1) the plaintiff adequately alleged that the defendant violated a *constitutional* right is alleged and (2) the right was 'clearly established' such that a reasonable officer would understand his conduct violate that right. *Id.* at 232 (citing *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). Although the Court may consider these twin prongs in the order which best suits the "circumstances in the particular case at hand," *id.* at 236, it is preferable to consider first whether the conduct at issue violated a constitutional right because such a determination advances the discourse as to whether the right is clearly established. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194 (2001).

The Court turns to the first prong of the qualified immunity analysis, whether Owen-Williams has alleged that Detective Kwarciany violated his constitutional rights. Owen-Williams avers that he was falsely arrested or imprisoned, which this Court broadly construes as his Fourth Amendment right to be free from unlawful arrest or seizure. To sustain a false arrest or imprisonment claim, the plaintiff must plausibly aver that at the time of the arrest, a reasonable officer in the defendant's position would not have believed there was probable cause to arrest the plaintiff. *See Sowers v. City of Charlotte*, 659 F. App'x 738, 739 (4th Cir. 2014) (citing *Street v. Sudyka*, 492 F.2d 368, 372-73 (4th Cir. 1974)). An officer's subjective intent or state of mind at the time of arrest is not relevant to this analysis. *Devenpeck v. Alford*, 543 U.S. 146 (2004).

"Probable cause exists if the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person . . . in the circumstances shown, to conclude that the

suspect has committed, is committing, or is about to commit an offense." *Bryant v. City of Cayce*, 332 F. App'x 129, 132 (4th Cir. 2009) (citing *Michigan v. DeFillippo*, 332 U.S. 31, 37 (1979). Further, "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal citations omitted). Thus, a "pretextual arrest based on improper motive is reasonable if objective circumstances support a finding of valid probable cause." *Lowe v. Spears,* No. 06-647, 2009 WL 1393860, at *3 (S.D.W.Va. May 15, 2009) (citing *Bennett v. Booth*, No. 04-1322, 2005 WL 2211371 (S.D.W.Va. Sept. 9, 2005); *see also Owen-Williams v. City of Gaithersburg*, No. PJM-10-185, 2011 WL 53082, at *3 (D. Md. Jan. 7, 2011).

Taking the facts alleged in the Complaint as true, Detective Kwarciany received information from an agent of the MCRCC that Owen-Williams was on the property without authorization. ECF No. 1 at ¶ 20. Further, Kwarciany knew that Owen-Williams had been barred from the property previously. ECF No. 1 at ¶ ¶ 8–9; *accord Bryant v. City of Cayce*, 332 F. App'x 129, 133 (4th Cir. 2009) (officer's awareness of previous warnings to the plaintiff to stay off the property informing probable cause to arrest for trespass); *Jones v. Drake*, No. 12-514, 2014 WL 126995, at *5 (W.D. Va. Jan. 13, 2014) (plaintiff's history of trespass in that location informs probable cause). It was, therefore, objectively reasonable for Kwarciany to believe he had probable cause to arrest Owen-Williams for trespass.[2] *See* Md. Code. Ann. Crim. Law. §6-403(b); *Drewry v. Stevenson*, No. WDQ-09-2340, 2011 WL 1298160, at *4–*5 (D. Md. Mar. 31, 2011) (holding that the officer had probable cause to arrest the plaintiff for trespass, even when further investigation would have revealed that the plaintiff was a lawful tenant of the

---

[2] This analysis is further supported by the Montgomery County Commissioner's affirmation that there was probable cause to arrest Owen-Williams for trespass. *See Torchinsky v. Siwinski*, 942 F.2d 257, 261–62 (4th Cir. 1991) (noting that that a judicial officer found probable cause existed for an arrest warrant was "plainly relevant" to qualified immunity analysis); *Fialdini v. Cote*, 594 F. App'x 113, 121 (4th Cir. 2014) (same); *State v. Smith*, 305 Md. 489, 515–16 (1986) (commissioners will only issue an arrest warrant "upon a finding that there is probable cause").

residence). Based on the facts as pleaded in the Complaint, the officers had probable cause to arrest Owen-Williams, and so he was not subject to an unconstitutional arrest or detention as a matter of law. Detective Kwarciany is entitled to qualified immunity. The § 1983 claims must be dismissed.

### b. State Common Law Claims

Because the Court has dismissed all federal claims against the Defendants, the Court may in its discretion decline to exercise supplemental jurisdiction over the remaining state common law tort claims. *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). The Court so declines. Questions of Maryland tort law are best resolved by Maryland courts. All state common law claims are thus dismissed.

## IV. Motion for Sanctions

Defendants request that the Court impose sanctions on Owen-Williams, including attorneys' fees and costs and a pre-filing injunction barring Owen-Williams from pursuing further claims against Montgomery County, its police officers and attorneys regarding his October 19, 2016, arrest and subsequent litigation. *See* ECF Nos. 14 & 14-3. Under Rule 11 of the Federal Rules of Civil Procedure, federal courts maintain the authority to sanction litigants if they file pleadings for an "improper purpose, such as harassment, delay or coercion." *See* Fed. R. Civ. P. 11; *see also Fastov v. Palisades Swimming Pool Assoc., Inc., et al.*, No. AW-05-1760, 2006 WL 4560161, at *7 (D. Md. Jan. 31, 2006). Rule 11 expressly applies to *pro se* litigants, although the court may exercise "sufficient discretion to take account of the special circumstances that often arise in pro se situations." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment (citing *Haines v. Kerner*, 404 U.S. 519 (1972)).

Defendants, as required by Rule 11, served their motion for sanctions on Owen-Williams more than twenty-one days prior to filing the motion with the Court. Owen-Williams had ample opportunity to withdraw or amend his pleadings to avoid potential sanctions, but he did not do so. *See* ECF Nos. 14 & 14-1; Fed. R. Civ. P. 11; *see also Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004); *accord Cromer*, 390 F.3d at 819-20 (opportunity to respond fulfills the rule 11 pre-filing injunctions ). Instead, Owen-Williams doubled down on his mischaracterization of facts and called the Defendants' motion "sublimely vapid, yet psychologically voluminously sententious." *See generally* ECF Nos. 17 & 18. The question of sanctions, therefore, is properly before the Court.

First, the Court finds that a pre-filing injunction is warranted. Pre-filing injunctions are available to courts "where vexatious conduct hinders the court from fulfilling its constitutional duty." *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 726 (D. Md. 2002), *aff'd sub nom. Whitehead v. Viacom, Inc.*, 63 F. App'x 175 (4th Cir. 2003); *see also* 28 U.S.C. § 1651(a); *Cromer v. Kraft Foods N.A., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004) (noting that courts may limit a litigant's access as a sanction for "a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions."). A pre-filing injunction is valid so long as it does not "effectively deny access to the courts, and the district court must give the litigant notice and the opportunity to be heard prior to granting the injunction." *Whitehead*, 233 F. Supp. 2d at 726 (internal citation omitted). Courts consider four factors when weighing whether a pre-filing injunction is warranted:

> (1) the party's history of litigation, in particular whether [the party] has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Cromer*, 390 F.3d at 818 (citing *Safir v. United States Lines, Inc.*, 729 F.2d 19, 24 (2d Cir. 1986). *cert denied*, 479 U.S. 1099 (1987)). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir*, 792 F.2d at 24; *see also Cromer*, 390 F.3d at 818 (adopting the *Safir* analysis and factors). If the court determines a pre-filing injunction is the appropriate remedy, "the judge must ensure that the injunction is narrowly tailored to fit the specific circumstances at issue." *Cromer*, 390 F.3d at 816.

Here, each factor favors a pre-filing injunction. Owen-Williams is clearly a vexatious litigant. Owen-Williams has brought, by the Court's estimation, at least thirteen suits in the United States District Court for the District of Maryland in the last ten years, all of which were remanded, dismissed, or ended in summary judgment for the defendant.[3] As a result, several courts have already issued pre-filing injunctions against him, including an injunction against filing *any* claim in the Circuit Court for Montgomery County without prior court approval. *See Owen-Williams v. City of Gaithersburg*, No. PJM-11-3354, 2012 WL 3038671, at *6 (D. Md. Jul. 24, 2012); *Owen-Williams v. Merill Lynch, Pierce, Fenner and Smith*, No. PJM-94-1287 (D. Md. Mar. 1, 2004); *Owen-Williams v. Sallah et al.*, Case No. 309831 (Mont. Cir. Ct., Md. Feb. 3, 2010); *Garland v. Owen-Williams*, No. 241501V (Mont. Cir. Ct., Md. Apr. 14, 2003); *Owen-

---

[3] A preliminary search revealed the following actions brought by Owen-Williams in the United States District Court for the District of Maryland: *Owen-Williams v. Maryland*, No. RDB-18-01 (D. Md. 2018) (ongoing); *Owen-Williams v. Higg et al.s*, No. RWT-15-1811, 2015 WL 4578421 (D. Md. Jul. 27, 2015) ; *Owen-Williams v. Anne Arundel County Circuit Court*, PJM-14-874 (D. Md. Mar. 27, 2014); *Owen-Williams v. Montgomery County Circuit Court*, PJM-11-2247 (D. Md. Aug. 9, 2012); *Owen-Williams v. Maryland Motor Vehicle Admin. et al.*, No. RWT-12-1828 (D. Md. Aug. 9, 2012); *Owen-Williams v. Cyran et al.*, No. PJM-11-3354 (D. Md. Jul. 24, 2012); *Owens–Williams v. City of Gaithersburg,* No. PJM-10-185 (D.Md. Jan 7, 2011); *Owen-Williams v. Palmer*, No. PJM-09-2293 (D. Md. Feb. 26, 2010); *Owen-Williams v. Sallah*, No. DKC-09-2670 (D. Md. Oct. 27, 2009); *Owen-Williams v. Montgomery County Circuit Court*, PJM-09-2076 (D. Md. Aug. 6, 2009).

*Williams v. Carl Robert Meyer*, No. 197131 (Mont. Cir. Ct., Md. Dec. 20, 2000); *Owen-Williams v. Law Offices of Stockbridge & Miles*, No. 226497 (Mont. Cir. Ct., Md. Aug. 7, 2003).

The Court is mindful that Owen-Williams is proceeding *pro se*. But Owen-Williams' *pro se* status does not give him "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986); *see generally* Fed. R. Civ. P. 11; *In re Vincent*, 105 F.3d 943 (4th Cir. 1997). The first factor weighs in favor of a pre-filing injunction.

Owen-Williams' pleadings also smack of bad faith, thus meeting the second factor. For example, although Owen-Williams "solemnly swear[s] *under the penalty of perjury* that [he is] a duly elected Member of the Montgomery County Republican Committee," ECF No. 18 at 1 (emphasis added), the public record reflects that he was removed from the Montgomery County Republican Committee in April 2015. *See* ECF No. 14-6 at Ex. 15 & 15a. Owen-Williams unsuccessfully challenged his removal in this Court and Baltimore City Circuit Court. *See Owen-Williams v. Higgs*, No. RWT-15-1811, 2015 WL 4578421 at *1–*2 (D. Md. Jul. 27, 2015); *Owen-Williams v. Higgs*, No. 24C17002015 (Balt. City. Cir. Ct. Sept. 28, 2017)(dismissing the action and ordering Owen-Williams to pay costs).

Owen-Williams further describes his arrest upon which his Complaint is based as his being "ambushed by 8-10 armed men," and an ambush "at gunpoint by approximately a dozen heavily armed men." ECF No. 18 at 5. But the arresting officers' body camera footage belies Owen Williams' hyperbole. The video rather shows two officers arresting Owen-Williams in a peaceable and somewhat unremarkable fashion, with Detective Kwarciany nearby. *See* ECF No. 14-6 at Ex. 3. The video does, however, capture Owen-Williams' premeditated plan to trump up

charges in the name of a future lawsuit against the officers. Owen-Williams is clearly recorded saying:

- "I hope you enjoyed your career. Trust me, I'll be released and I will begin tomorrow ending your career."

- "You'll thank me when I get you in federal court . . . I absolutely guarantee it. I will make it my life's mission to see to it that you are held accountable for this nonsense."

- "I'm going to hound you in court for the rest of your fucking life. Ask Sergeant Sheplin what happened. See you in court, Asshole."

*See* ECF No. 15 at Ex. 3. In light of the above, the Court finds that Owen-Williams did not bring this litigation in good faith.

As to the historic burden suffered by the Court and other parties because of Owen-Williams' lawsuits, Owen-Williams appears to have wasted judicial resources in at least a bakers-dozen of lawsuits. *See supra* note 2. Given Owen-Wiliams' well-documented pattern of pursuing vexatious and repetitious litigation, this Court finds that nothing less than a prefiling injunction will stop Plaintiff from continuing to burden this Court with frivolous lawsuits.[4] As noted by Montgomery County Circuit Court Judge John W. Debelius III:

"Mr. Owen-Williams has clearly demonstrated through his numerous filings with the Court his intent to harass and vex private individuals . . . When Mr. Owen Williams' complaints for relief are denied or dismissed, he attempts to re-litigate the validity of the determination against the same defendants. Mr. Owen-Williams has also shown the propensity to file frivolous lawsuits against attorneys who have represented Defendants that Mr. Owen-Williams has previously sued."

*Owen-Williams v. Sallah et al.*, Case No. 309831 (Mont. Cir. Ct., Md. Feb. 3, 2010); *see also supra* note 2. This Court shares Judge Debelius' views. Because a pre-filing injunction's aim is to eliminate only frivolous actions, Owen-Williams will still have access to the courts as he will

---

[4] Owen-Williams has already filed a nearly identical complaint to the one entered in this action, but against the State of Maryland. The complaint was filed in the Circuit Court for Baltimore City and removed to this Court on January 2, 2018. *See Owen-Williams v. Maryland*, No. RDB-18-01 (D. Md. 2018).

be permitted to file future suits with leave of the Court. *Whitehead*, 233 F. Supp. 2d at 726; *see also Cromer,* 390 F.3d at 817.

As to monetary sanctions, although the Court sympathizes with the needless time and expense that Owen-Williams has visited on Defendants, the Court declines to impose monetary sanctions at this juncture. This is because in the Court's view, the pre-filing injunction will most effectively address Owen-Williams's abuse of process and best deter future frivolous or vexatious litigation. *See In re Kunstler*, CITE, ("[I]t is clear that the primary, or 'first'" purpose of Rule 11 is to deter future litigation abuse."). Further, the Court notes that Owen-Williams has proceeded *in forma pauperis* in other cases, *see, e.g. Owen-Williams v. Higgs*, No. RWT-15-1811 , 2015 WL 4578421, at *1 (D. Md. Jul 27, 2015), which cautions against the imposition of monetary sanctions when effective non-monetary sanctions are available. *See Stundli v. Chidren and Youth Services*, No. JKC-12-1093, 2012 Wl 5420322, at *6 (D. Md. Nov. 6, 2012) (instituting a pre-filing injunction but not monetary sanctions because the plaintiff was proceeding pro se and in forma pauperis).

## V.  Conclusion

For the foregoing reasons, Defendants' motions to dismiss, ECF Nos. 12 & 13, are GRANTED. The motion for sanction, ECF No. 14, is GRANTED in part and DENIED in part. A separate Order follows.

  3/13/2018  
  Date

  /S/  
  Paula Xinis  
  United States District Judge